United States Courts
Southern District of Texas
FILED

FEB 26 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

AARON STRIZ,
   TDCJ-ID #838215,
    Plaintiff,

v.

BRIAN COLLIER, et al.,
    Defendants,

Civil Action No. 3:18-cv-00202

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiff, Aaron Striz, pro se, in opposition to Defendants' Motion to Dismiss, respectfully offers the following reply;

### I. DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Defendants have misconstrued or misrepresented Plaintiff's claims for monetary damages. As is made explicitly clear in Plaintiff's initial complaint and subsequent Amended Complaint (sent to Court and Defendants via U.S. Mail on January 11, 2019), Plaintiff is **not** seeking monetary damages against Defendants in their **official** capacities. Plaintiff is suing Defendants in both their individual and official capacities, and it is in their **individual** capacities that Plaintiff is seeking **punitive** damages under §1983. In their individual capacities Defendants are not entitled to Eleventh Amendment immunity protection.

If Federal law is clearly established, the official is on notice that violation of Federal law may lead to personal monetary liability. Hope v. Pelzer, 536 U.S. 730 (2002), U.S. v. Lanier, 520 U.S. 259 (1997). And Plaintiff may recover punitive damages against an official in their individual capacity if the official acted with a malicious or evil intent or in callous disregard of plaintiff's federally protected rights. Smith v. Wade, 461 U.S. 30 (1983).

Plaintiff is not seeking monetary damages against Defendants in their official capacities, as is being misconstrued or misrepresented by Defendants. Therefore, dismissal of Plaintiff's complaint based on Rule 12 (b)(1) would be erroneous.

### II. DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

As cited by Defendants, Ashcroft v. Iqbal, 556 U.S. 662 (2009), "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"..."Facial plausibility" exists "when the plaintiff pleads factual content that allows the court

1.

to draw the reasonable inference that the defendant is liable for the misconduct alleged"...And "determining whether a complaint states a plausible claim is **context-specific**, requiring the reviewing court to draw on its experience and common sense."

Again, Defendants are either misconstruing or intentionally misrepresenting the facts outlined in Plaintiff's complaint in their attempt to have it dismissed for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff maintains that ALL named Defendants in his original and Amended Complaint have engaged in an ongoing pattern of behavior and abuse of discretion, since atleast July 2010, to deprive him of due process and equal protection, thereby subjecting him to cruel and unusual punishments, and in violation of ex post facto prohibitions, by continuing administrative segregation with no valid reason and no legitimate penological purpose, long before his transfer to Darrington Unit, where this pattern of behavior was continued.

Plaintiff Striz's escape occurred on August 7, 1998, while he was a pretrial detainee at Grimes Co. jail. After being sentenced on September 9, 1998, he was transferred the following morning to the custody of TDCJ, whereupon his initial classification was to MINIMUM CUSTODY. (Defendants erroneously claim that Plaintiff's "initial classification" upon arriving at Darrington unit is relevant. When in fact, "initial classification" is based upon an inmate's crime of conviction upon first entering prison, not when he is transferred from one unit to another, as Defendants try to misrepresent. Wilkerson v. Stalder , 329 F.3d 431, 435-36 (5th Cir., 2003).)

Plaintiff Striz remained in general population until August 2001 when he was "confirmed" as a member of a Security Threat Group (STG, i.e., a prison gang), and assigned to administrative segregation, where he has remained for nearly 18 years. Plaintiff is not, and never was, assigned to ad-seg for his pretrial escape from county jail. The ONLY reason Defendants give for his continued indefinite confinement to ad-seg is "confirmed STG." This fact is supported by documentation in Plaintiff's Amended Complaint. See "Exhibit-F", in said Amended Complaint, State Classification Committee Review Hearing Record of August 7, 2018, which states that the sole reason for Plaintiff's continued ad-seg confinement is "confirmed STG."

All named Defendants have knowingly and willfully continued to use this false pretext of "confirmed STG" despite admitting that since atleast July 2010 Plaintiff is no longer a gang member and his "disassociation packet" is complete. This is documented in Plaintiff's Amended Complaint, Exhibit-B (Step-One Grievance response from Sgt. Puckett, Estelle Unit STG Officer, confirming that Plaintiff's disassociation packet is complete), Exhibit-C(5) (email chain between Plaintiff's

2.

mother, Renee Halfin, and Robert Grant, GRAD Program Supervisor, stating that Plaintiff's required investigation is complete, disassociation is complete, and he is prequalified for GRAD but not eligible due to SPD Codes, and that Kristen Gibson at State Classification is responsible for this decision.)

Defendants' reasoning for Plaintiff's continued indefinite solitary confinement, as evidenced by Amended Complaint Exhibits B, C(3), C(4), and C(5), is essentially, "We know you are no longer a gang member, but you are not eligible for GRAD due to SPD Codes, therefore you will remain in seg as a confirmed gang member until you complete the GRAD program."

In the "context-specific" facts of Plaintiff's claims, evidenced by documentation from Defendants, how does Defendants' absurdist circular reasoning for continued indefinite confinement to ad-seg meet any standards of common sense?

Defendants' admission that Plaintiff is no longer a gang member, while continuing to use this invalid excuse for indefinite ad-seg confinement, combined with the extreme duration of this confinement (approaching 18 years), while other similarly situated inmates with SPD Codes have been allowed to complete GRAD and be released from ad-seg (namely Riley Ray Fultz, Allen Campbell, Isaac Salazar, and Taylor Ray, among others); all these factors combined create the "extraordinary" and "exigent circumstances" required to sustain a due process claim, as outlined by the cases cited in Defendants' Motion to Dismiss, namely: Plaintiff can clearly prove an abuse of discretion where officials "willingly and intentionally" rely on false information and a false pretext (SPD Codes prevent him from minimum custody required to complete GRAD, so he must remain in ad-seg as a "confirmed gang member"), which create the extraordinary circumstances required by Pichardo, Luken, and Scott. Plaintiff also specifically names other similarly situated inmates who have been treated differently than Plaintiff, as required to sustain a 14th Amendment claim.

Defendants cite Sandin v. Conner, 515 U.S. 472, (1995) to allege that Plaintiff has no liberty interest in remaining free of administrative segregation. When in fact, Defendants have presented a distorted interpretation of Sandin, because at 486, Sandin states, "placement in segregation is atypical and significant when it exceeds the punishment of similarly situated inmates in duration or degree of restriction." Plaintiff has clearly demonstrated how his confinement meets Sandin's "atypical and significant" criteria.

By any standards, 18 years of solitary confinement in ad-seg is atypical and significant, especially when defendants acknowledge that Plaintiff has done everything required of him and that the original reason for ad-seg placement is no longer valid, giving rise to Plaintiff's Eighth Amendment claims that such prolonged conditions of isolation and deprivation serve no legitimate penological

purpose.

To this end, Plaintiff offers the following cases for the Court's consideration: Wilkinson v. Austin, 125 S. Ct. 2384, 2393 (2005), "A liberty interest may arise from the constitution itself...or it may arise from an expectation or interest created by state laws or policies. see e.g. Wolff v McDonnell, 418 U.S. 539, 556-558." In Plaintiff Striz's case, the state has created a liberty interest in remaining free of ad-seg by, 1.) creating a classification system to establish criteria for ad-seg placement and this criteria provides for inmates to avoid placement in ad-seg, and 2.) the establishment of a program (GRAD) with an expectation that an inmate may participate in it, as a method to be released from ad-seg. Wilkinson, at 2393, "We have also held, however, that a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin." And, at 2397, "Although Sandin abrogated Hewitt's methodology forestablishing liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards." Thus, the procedural due process safeguards outlined in Hewitt v Helms, 459 U.S. 460 (1983) and other pre-Sandin cases are still necessary and established rights to due process.

Wilkerson v. Stalder, 329 F.3d 431, 435-36(5th Cir., 2003), "Generally, courts are not concerned with a prisoner's initial classification based on his criminal history before incarceration...[but] if the inmate's confinement in extended lockdown [ad-seg/solitary confinement] is not the result of their initial classification, the Sandin test would be triggered." In Plaintiff Striz's case, his initial classification upon entering TDCJ, based on crimes of conviction (stemming from the pretrial escape), he was assigned to minimum custody. He was only placed in seg later as a gang member. Thus, the Sandin test is triggered.

Upon remand, Wilkerson v. Stalder, 639 F.Supp 2d 654 (M.D.La., 2007), at 679, "Both the Supreme Court and the 5th Circuit have recognized that certain conditions that would pass constitutional scrutiny if imposed for a short period of time may be rendered unconstitutional if imposed for an extended period of time. Gates v. Cook, 376 F.3d 323, 333(5th Cir, 2004), citing Hutto v. Finney, 437 U.S. 678, 686-87." Wilkerson goes on, at 680, "A conclusion that prolonged isolation from social and environmental stimulation increases the risk of development of mental illness does not strike this court as rocket science...quoting McClary v. Kelly, 4 F.Supp2d 195, 209(W.D.NY, 1998)" Additionally, in the context of prison conditions, deliberate indifference may be indicated by the lack of a legitimate penological justification for the condition. Hope v. Pelzer, 536 U.S. 730, 737-38(2002). Courts have held that while ad-seg is not inherently unconstitutional,

4.

if imposed for illegitimate reasons, it may be. And that the reason for segregation must not only be valid at the outset, but must continue to subsist during the period of segregation. <u>Kelly v. Brewer,</u> 525 F.2d 394, 400 (8th Cir, 1975).

<u>Williams v. Hobbs</u>, 662 F.3d 994(8th Cir, 2011), 14 year ad-seg confinement constitutes atypical and significant hardship, and due process is not satisfied where the review is a perfunctoryprocess and officials claim that good behavior is irrelevant.

<u>Shoats v. Horn</u>, 213 F.3d 140(3rd Cir, 2000), 8 years solitary confinement with no prospect of immediate release sufficiently atypical and significant hardship to create a protected liberty interest, especially considering lack of contact with family and deprivation of educational and vocational opportunities.

Defendants allege that there is no protectable liberty interest in remaining free of ad-seg...yet numerous courts have said that, upon meeting certain criteria of atypical and significant hardship, there is a liberty interest. Furthermore, if there is no protectable liberty interest in remaining free of ad-seg, why are Defendants required to conduct periodic due process reviews to keep an inmate in seg? Why create a method and criteria for inmates to earn their release from ad-seg if there is no due process liberty interest in remaining free of ad-seg? If there is no liberty interest, what's to prevent prison officials from tossing a prisoner in ad-seg for no reason for the duration of his sentence?

<u>Kelly v. Brewer,</u> 525 F.2d 394(8th Cir, 1975) establishes due process review hearings , requires that the reason for seg must not only be valid at the outset, but must continue to subsist during period of segregation, and where inmate is held in segregation for long or indefinite periods, due process requires that situation be reviewed periodically and MEANINGFULLY and by relevant standards.

<u>Ruiz v. Estelle</u>, 503 F.Supp. 1265, 1366-67(S.D.Tx, 1980)  Once an inmate is placed in ad-seg, due process requires that his status be reviewed periodically to determine if there is a valid reason for his continued segregation. The Constitution prohibits the imposition of ad-seg in an arbitrary and capricious manner. "It goes without saying that a prison warden may not constitutionally put an inmate in ad-seg...simply because he dislikes the inmate or desires to punish him for past misconduct."

Defendants admit that the original reason for Plaintiff's ad-seg placement is no longer valid, yet they continue to knowingly and willfully use that invalid excuse for indefinite confinement simply because Plaintiff is not eligible for the GRAD program due to SPD Codes...which are completely unrelated to why he was placed in ad-seg 18 years ago. By doing this, Defendants have rendered these

due process review hearings to be a meaningless, perfunctory farce, devoid of substantive due process.

Furthermore, by using the pretext of "SPD Codes" to make him ineligible for GRAD and perpetuate this farce of "Confirmed STG," Defendants are now punishing Plaintiff for past misconduct (the pretrial escape from county jail) that he was never punished for immediately after it occurred, or when he entered TDCJ more than 20 years ago. TDCJ created SPD Codes in 2001 (in the wake of the Texas-7 fiasco), after Plaintiff was assigned to ad-seg as a confirmed gang member, then officials applied these SPD Codes retroactively in violation of ex post facto prohibitions. Koch v. Lewis, 96 F.Supp2d 949, 955(2000), "Due process contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them. citing Daniels v. Williams, 474 U.S. 327, 327-28(1986)." And, Koch, at 959, citing Weaver v. Graham, 450 U.S. 24(1981), requirements that, 1.) a law must be retrospective, that is, it must apply to events occurring before its enactment, and 2.) it must disadvantage the offender affected by it. Thus, a statute or administrative regulation may be barred as retrospective even if it alters punitive conditions outside the sentence. Weaver at 32. The Ex Post Facto Clause prohibits prison officials from imposing new or amended regulations which are themselves "punitive conditions" of confinement. Occasionally a regulation may be so punitive in effect as to prevent a court from legitimately viewing it as regulatory or civil in nature, despite the rulemaker's intent. Russell v. Gregoire, 124 F.3d 1079, 1086(9th Cir, 1997), citing U.S. v. Ursery, 518 U.S. 267(1996).

Plaintiff is not, nor has he ever been, in ad-seg due to SPD Codes or the escape that those SPD Codes are based on. Nor has he ever received due process placement hearings or State Classification Committee reviews to be held in seg for those SPD Codes, or as an escape risk, or any other reason than "confirmed STG."

In their motion, Defendants conflate the purpose or authority of separate reviews. Unit Classification Committees make unit-level decisions, housing assignments, and recommendations to State Classification Committee regarding inmates in ad-seg. State Classification Committee reviews are every 6 months to review the reason for ad-seg placement or further confinement. The SPD Review Committee has no authority to determine an inmate's classification status; the sole purpose of SPD Review Committee is to determine whether or not a reason exists for SPD Codes to remain active, or to deactivate the SPD Codes. (See TDCJ Classification Plan and Ad-Seg Plan). But often, as in Plaintiff's case, the same officials sit

on all of these committees. And in Plaintiff's case, the SPDRC decision reinforces the UCC and SCC circular reasoning to keep Plaintiff in ad-seg for something they know and admit to be invalid. Likewise, Defendants admit that there is no reason not to deactivate the SPD Codes after 20 years of good behavior, yet they refuse to do so. Then these same Defendants turn around and sit on UCC and SCC committees and admit that plaintiff is not a gang member, but decide that he must remain in seg as one because he is not eligible for the GRAD Program due to SPD Codes...the same SPD Codes they admit should be deactivated.

    Plaintiff does not deny that he has received innumerable classification reviews during his nearly 18 years in ad-seg. Plaintiff's contention is that these hearings are a meaningless, perfunctory farce, devoid of substantive due process because defendants knowingly use an invalid pretext for continued indefinite confinement.

    Defendants motion repeatedly circles back to the false claim that Plaintiff "alleges no facts that demonstrate that administrative segregation is an inappropriate classification for an inmate with escape or assaultive precautions or that Defendants were prohibited from considering Plaintiff's SPD Codes when assigning housing."

    In fact, Plaintiff asserts, and can prove, that upon entering TDCJ in September 1998, only a month after his pretrial escape from county jail, his initial classification was to minimum custody. At no time has he ever been assigned to ad-seg for escape or assaultive precautions, nor is that the "official reason" why he continues to be housed in ad-seg. Nor has Plaintiff committed any serious violations to warrant continued ad-seg confinement. Further, it seems that Defendants, in their Motion to Dismiss, have inadvertently admitted to retrospective application, 20 years ex post facto, and to punishing plaintiff now for something he wasn't punished for upon entering TDCJ a month after that incident ocurred at county jail. Why are they now claiming that his SPD Codes are the basis of his classification to ad-seg, or that those are now being considered in their decision? If Plaintiff wasn't considered a security risk 20 years ago, why now? These circumstances seem rather extraordinary (and inexplicable), do they not?

    This combination of 5th, 8th, and 14th Amendment violations, as well as Ex Post Facto violations, do, in fact, constitute exigent and extraordinary circumstances necessary to state a claim for atypical and significant deprivations.

    For all of these reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), failure to state a claim for a violation of a protected federal or constitutional right, should be denied.

III. DEFENDANTS' CLAIMS THAT PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

Lewis v. Casey, 518 U.S. 343 (1996) requires a prisoner must show an actual or imminent injury, and in this context, "injury" is not limited to physical damage to Plaintiff's body, but the continuous, ongoing psychological harm caused by prolonged isolation and deprivation of basic human psychological needs with no legitimate penological interest. The severely detrimental physical and psychological effects of long term solitary confinement and enforced inactivity are well established and recognized by courts. Wilkerson v. Stalder, 639 F.Supp2d 654 (M.D.La, 2007), Ruiz v. Johnson, 37 F.Supp2d 855, 914(S.D.Tx, 1999), Koch v. Lewis, 216 F.Supp2d 994(D.Ariz, 2001), U.S. v. Noriega, 40 F.Supp2d 1378(S.D.Fla, 1999), Ruiz v. Estelle, 503 F.Supp 1265(S.D.Tx, 1980), Wilkinson v. Austin, 125 S.Ct. 2384(2005), McClary v. Kelly, 4 F.Supp2d 195(W.D.NY, 1998), and subseq. at McClary v Coughlin, 87 F.Supp2d 205(W.D.NY, 2000).

Plaintiff **meets all four** elements for a party seeking an injunction:
1.) Based on facts, documented evidence, and established caselaw, Plaintiff is likely to prevail on the merits and show that Defendents have, and are continuing to, violate Plaintiff's clearly established rights,
2.) Every day of continued solitary confinement contributes to the enduring harmful effects of long term solitary confinement, isolation, and deprivation of basic human needs. Wilkerson v. Stalder, 639 F.Supp2d at 684, "With each passing day, [the effects of solitary confinement] are exponentially increased, just as surely as a single drop of water repeated endlessly will eventually bore through the hardest of stones."
3.) The threatened injury to Plaintiff is very real, well established, and much greater than any potential harm to Defendants, in that there is no potential harm to Defendants. Plaintiff's initial classification upon entering TDCJ was to minumum custody, therefore, how can Defendants honestly argue that it will harm them now, 20 years later, when it didn't harm them 20 years ago?
4.) If it wasn't a disservice to public interest to assign plaintiff to minimum custody upon entering TDCJ, how would it be a disservice 20 years later, when Plaintiff has 20 years of good behavior? Where is the disservice to public interest in allowing Plaintiff, who is approaching parole eligibility, access to rehabilitative, educational, and vocational opportunities and social reintegration? It seems more of a disservice to public interest to keep an inmate in solitary confinement for decades, only to eventually release him into the public with no rehabilitation

or education...unless...are Defendants truly going to argue that the purpose of incarceration isn't to educate and rehabilitate prisoners so that they are productive members of society upon release?

For these reasons, Defendants' Motion to Dismiss should be denied, and Plaintiff's request for injunctive relief should be granted.

### IV. DEFENDANTS' CLAIMS THAT DAMAGES AGAINST THEM ARE BARRED BY THE PLRA ABSENT SHOWING OF PHYSICAL INJURY

Once again, Defendants are either misconstruing or intentionally misrepresenting Plaintiff's claims. The PLRA prohibits recovery of COMPENSATORY damages absent showing of physical injury. However, the PLRA does not prohibit the recovery of NOMINAL AND PUNITIVE damages, which is what Plaintiff specifically requests in both his original and Amended Complaints.

The PLRA did not intend to bar recovery for all forms of relief, and absent physical injury, plaintiffs may recover nominal and punitive damages in addition to injunctive and declatory relief. Royal v. Kautzky, 375 F.3d 720 (8th Cir, 2004), Sigger-el v. Barlow, 433 F.Supp2d 811 (E.D.Mich, 2006), Williams v. Hobbs, 662 F.3d 994 (8th Cir, 2011), McClary v. Coughlin, 87 F.Supp2d 205 (W.D.NY, 2000)

Also, punitive damages may be assessed in a §1983 action when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983).

As Defendants have exhibited, at the very least, callous indifference to Plaintiff's federally protected rights, Defendants are liable for punitive and nominal damages. Therefore, Defendants' Motion to Dismiss based on an erroneous assertion that damages are barred by the PLRA, must be denied.

### V. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

As Defendants so ably aver, qualified immunity only "affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818(1982). Defendants' motion also affirms the two-part test wherein, 1.) the court must ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right, and 2.) the court must then determine whether that right had been clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right.

In the foregoing paragraphs of Plaintiff's Opposition to Defendants' Motion

to Dismiss, Plaintiff has satisfied the first prong of this test by demonstrating clearly established constitutional rights to due process under the 5th Amendment, 8th Amendment prohibitions against cruel and unusual punishments of long term solitary confinement with no legitimate penological purpose, 14th Amendment Equal Protection, and prohibitions against Ex Post Facto punishments under article 1, §10, of the United States Constitution.

The second prong of this test is also satisfied in that any reasonable official in Defendants' situation would have understood that their conduct violated those rights. Beginning with the Ruiz series of landmark Texas prison reform litigation, the duties of officials and rights of prisoners have been clearly established in Texas prisons. Nor can Defendants claim a lack of knowledge, or "take solace in ostrichism." Ruiz v. Estelle, 503 F.Supp 1265, 1384-85(S.D.Tx, 1980). And to this extent, since atleast 2010, Plaintiff has repeatedly informed Defendants of their illegal conduct and cited caselaw asserting his rights through written and verbal statements to classification committees and through the grievance process. (Several of these are attached to Plaintiff's original and amended complaints.)

Furthermore, Wilkerson v. Stalder, 639 F.Supp2d 654 (M.D.La, 2007) addresses this specific issue of qualified immunity in the context of due process and cruel and unusual conditions arising from decades of solitary confinement with no legitimate penological purpose, and the "evolving standards of decency that mark the progress of a maturing society." at 677, citing Farmer v. Brennan, 511 U.S. 825, at 833-34 (1994). And at 680, "deliberate indifference may be indicated by the lack of a legitimate penological justification for the condition," quoting Hope v. Pelzer, 536 U.S. 730, 737-38 (2002).

Wilkerson, at 683, in discussion of qualified immunity, "The court in Hope went on to explain that even in novel factual situations, officials can still be on notice that their conduct violates established law. That is, there does not have to be any previous case that is 'fundamentally similar' or even 'materially similar' factually. Hope v. Pelzer, 536 U.S. at 741, referencing U.S. v. Lanier, 520 U.S. 259 (1997). Instead, the inquiry courts are instructed to make 'is whether the state of the law [at the time of the challenged conduct] gave [prison officials] fair warning that their alleged treatment of [plaintiff] was unconstitutional,' Hope, at 741.

Wilkerson's conclusion on the question of qualified immunity, at 685, "It is clear that in 1999, any reasonable official would know that continuing to hold inmates in isolation, in a solitary cell for 23 hours a day for three decades

as a punitive measure without any current, legitimate penological justification is constitutionally infirm. Whether or not this evidence prevails at trial is for a jury to decide, but for the purposes of this motion, it is sufficient to overcome defendants' motion with regard to qualified immunity."

Finally, the TDCJ Classification Plan states on page-1, that "Classification strives to achieve the following goals...#8.) To maintain a dynamic and flexible classification system so that changes in legislation, the judicial interpretation of legislative mandates...can be incorporated smoothly without creating disharmony in prison operations." This would seem to imply that defendants are aware of their duty to keep up with and abide by "judicial interpretations of legislative mandates" that are clearly established in Texas since at least the <u>Ruiz</u> rulings of 1980 and thereafter, and in the 5th Circuit since atleast the <u>Wilkerson</u> proceedings beginning in 2000.

To that point, Defendants cannot legitimately claim that Plaintiff's rights are not clearly established, or that any reasonable official wouldn't have possessed the common sense to understand that their conduct violated those rights.

For these reasons, Defendants are not entitled to qualified immunity and their Motion to Dismiss should be denied.

## VI. CONCLUSION

For all the reasons outlined above in Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied on ALL counts.

Furthermore, as Defendants have failed to respond to all claims in Plaintiff's Complaint, as was ordered by the Court, Plaintiff respectfully reasserts and preserves all claims therein, namely; 1st Amendment retaliation, 5th Amendment Due Process, 8th Amendment prohibition of cruel and unusual punishments, 14th Amendment Equal Protection, and violations of United States Constitution, article 1, §10, prohibition of Ex Post Facto punishments.

Respectfully submitted, this, the 25th day of February, 2019.

*Aaron Striz*
Aaron Striz, pro se
TDCJ-ID#838215
Darrington Unit
59 Darrington Rd.
Rosharon, TX 77583

11.

CERTIFICATE OF SERVICE

    I, Aaron Striz, pro se, certify that a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss, has been served by placing same in the U.S. Mail, first class postage paid, on February 25, 2019, addressed to :

Jeanine M. Coggeshall
Assistant Attorney General, Law Enforcement Defense Division,
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

*/s/ Aaron Striz*

Aaron Striz, pro se
TDCJ-ID#838215
Darrington Unit
59 Darrington Rd
Rosharon, TX 77583