**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **AARON STRIZ, #00838215,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-cv-0202** |
| | § | |
| **BRIAN COLLIER, ET AL.,** | § | |
| *Defendants.* | § | |

---

## DEFENDANTS BUTCHER, PHARR, DAVIS, POWERS, AND MONTEZ'S MOTION FOR SUMMARY JUDGMENT

---

Defendants Michael J. Butcher, Kurtis D. Pharr, Lisa M. Davis, James Powers, and Myra M. Montez ("Defendants") move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. In support of their motion and in opposition to Plaintiff's motion for partial summary judgment [ECF No. 22], Defendants respectfully offer the following:

### I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Aaron Striz is an offender confined to the custody of the Texas Department of Criminal Justice ("TDCJ"). Plaintiff proceeds *pro se* and *in forma pauperis* and brings this action pursuant to 42 U.S.C. § 1983. Plaintiff original complaint named seventeen defendants. ECF No. 1. The Court ordered defendants Butcher, Davis, and Pharr to respond to Plaintiff's Complaint. ECF No. 10. In response to the Court's order Butcher, Davis, and Pharr filed a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. ECF No. 12. Their motion was granted as to Plaintiff's claims for money damages in their official capacities but denied without prejudice as to the other grounds. ECF No. 16.

The Court also granted Plaintiff permission to file an amended complaint and issued an amended order to answer. ECF No. 17. In his amended complaint, Plaintiff alleges violations of Fifth, Eighth, and Fourteenth Amendments and the Ex Post Facto clause and seeks punitive damages,

declaratory, and injunctive relief against twenty defendants. ECF 17-2. After reviewing Plaintiff's amended complaint, the Court ordered a response from Butcher, Davis, Pharr, Powers, and Montez. ECF No. 17.  These defendants filed an answer denying Plaintiff's claims and asserting their entitlement to qualified immunity. ECF No. 21.

At all times relevant to his claims, Defendants were employed by TDCJ and acting in their official capacity.  Plaintiff sues Defendants in their official capacities for declaratory and injunctive relief and individual capacities for punitive damages. ECF 17-2.  Davis, Pharr, Montez, and Powers hold the same positions they held at the times relevant to Plaintiff's claims.  Butcher, however, is now the senior warden at the Polunsky Unit in Beaumont, Texas.  Bruce Armstrong is the current senior warden at the Darrington Unit and is substituted as a defendant for official capacity claims against the senior warden at the Darrington Unit. [1]

Defendants deny Plaintiff's claims and assert that summary judgment is warranted under Federal Rule of Civil Procedure 56.  Defendants have disclosed all relevant documentation in their possession, and this matter is ripe for summary judgment.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move the court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff cannot prove Defendants violated any constitutional right to give rise to liability under 42 U.S.C. § 1983, that he is entitled to declaratory or injunctive relief, or that he can overcome Defendants' entitlement to qualified immunity.  Therefore, Defendants motion for summary judgment should be granted and all claims against them should be dismissed.

## III.    ISSUES TO BE RULED ON BY THE COURT

- Can Plaintiff prove that Defendants violated a constitutional right to entitle him to relief under

---

[1] Federal Rule of Civil Procedure 25(d) allows for the automatic substitution of an official's successor for an official sued in his official capacity.

42 USC § 1983?

- Can Plaintiff prove that he is entitled to injunctive relief under the PLRA?

- Can Plaintiff overcome Defendants' entitlement to qualified immunity in order to state a claim for punitive damages against Defendants in their individual capacities?

### IV.   SUMMARY JUDGMENT EVIDENCE

**Exhibit A:**          **Plaintiff's relevant Criminal records**

**Exhibit B:**          **Offender Orientation Handbook**

**Exhibit C:**          **TDCJ Classification Plan**

**Exhibit D:**          **Plaintiff's relevant Classification records**

### V.   STATEMENT OF FACTS

The following facts are neither in dispute nor reasonably susceptible to dispute.  Defendants concede these facts for the purpose of this motion for summary judgment.  Undisputed facts should not be considered admissions for the purpose of trial.

TDCJ policy requires that the Unit Classification Committee or UCC evaluate an offender to determine their appropriate classification and housing assignment. Ex. B at 15-20; Ex. C at 23-25.  The primary function and objective of the UCC is to classify each offender to ensure the safety, security, and treatment needs of each offender are met and that the safety and security of the staff, the prison and the public are maintained. Ex. C at 24.

TDCJ promulgates procedural processes for UCC hearings as outlined in the Unit Classification Process. Ex. C at 27-28.  TDCJ policy also requires subsequent periodic reviews of offender classifications. Exhibit C at 28-29.

In addition to the UCC, TDCJ also provides for a State Classification Committee or SCC. Ex. C at 29.  The SCC is responsible for reviewing and approving offender's placement; they are required to regularly visit units in order to conduct scheduled reviews of offenders assigned to administrative

segregation. Ex. C at 29. *Id.*

Plaintiff entered TDCJ custody to serve a life sentence for two aggravated assaults on public servants when it was found that Plaintiff stabbed one jailor and struck another with a riot baton in connection with Plaintiff's escape from Grimes County Jail. *See* Exhibit A.  As a consequence of these crimes, Plaintiff was assigned Security Precaution Designators ("SPD") of escape risk, hostage taker, and staff assaultive. Ex. D at 24.

In 2001, Plaintiff was confirmed as a member of the Aryan Brotherhood Texas, an organized prison gang. ECF No. 17-2 at 9.  Based on his confirmed prison gang affiliation he was assigned to administrative segregation. *Id.* at 10.

On March 28, 2019 Plaintiff was transferred to the Darrington Unit. *See* ECF 17-2 at 14.  In connection with this transfer, Plaintiff appeared before Pharr and other TDCJ officials on March 29, 2018, for a housing assignment at Darrington. ECF No. 17-1 at 10.  Plaintiff explained to officials that he was no longer a gang member. *Id.*  Plaintiff alleges that the officials determined he was not an active gang member and acknowledged that his gang disassociation form was complete, but noted he had Security Precaution Designator (or "SPD") codes on his file. *Id.*

After this initial classification, Plaintiff states that he had another classification hearing in April 2018. ECF 17-1 at 10.  According to Plaintiff, at that hearing, his SPD codes were reviewed. *Id.* Plaintiff states that he explained his situation to Defendants, including the length of time between the escape and his current incarceration, but Defendants did not remove the SPD codes from his file and continued to house him in administrative segregation. *Id.* at 11.  The committee voted to retain Plaintiff's SPD codes due to the severity of the offenses. Ex. D at 40.

Plaintiff alleges that on August 7, 2018, he received a 6-month State Classification review conducted by Defendant Pharr, Defendant Montez, and a State Classification representative. ECF No. 17-2 at 15.  Plaintiff submitted a written statement to the committee explaining his circumstances.

*Id.* During the SCC review, it was determined that Plaintiff was appropriate assigned to Administrative Segregation *Id.*

## VI.   SUMMARY JUDGMENT STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  "A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  Where, as in the instant case, an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.*  The plaintiff bears the burden of negating qualified immunity and that burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.*; *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks and citation omitted).

On summary judgment, "the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  Summary judgment in favor of the defendant is proper where plaintiff is unable to meet the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Gibbs v. Lynn*, 30 F.3d 1490 (5th Cir. 1994) (Requiring the defendant to raise a material issue "supported by specific, non-conclusory affidavits or other competent summary judgment evidence.").

## VII.   ARGUMENT

**A.     Plaintiff's allegations do not rise to the level of a constitutional violation to give rise to liability under 42 U.S.C § 1983.**

Plaintiff's allegations against Defendants, if taken as true, do not rise to the level of a constitutional violation.  It is well-established that no recovery may be had under § 1983 absent proof

of deprivation of a right secured by the Constitution or laws of the United States. *Baker v. McCollan,* 443 U.S. 137, 140 (1979); *Thorne v. Jones,* 765 F.2d 1270, 1272 (5th Cir. 1985). Thus, the first inquiry in any suit brought under § 1983 is whether the plaintiff has been deprived of a federally secured right. *Baker,* 443 U.S. at 140. Here, Plaintiff brings several interrelated claims alleging violations of his constitutional rights; each of these is addressed separately below.

> **1.   Due Process**

The crux of Plaintiff's claims against Defendants stem from his claim that his due process rights have been violated because he was assigned to administrative segregation at the Darrington Unit. In order to survive summary judgment on this issue, Plaintiff must present evidence that his housing assignment both deprived him of a liberty interest protected by the Fourteenth Amendment[2] and that the due process protections in place were constitutionally inadequate. Plaintiff cannot meet this burden.

First, to maintain his due process challenge, Plaintiff must establish that his assignment to administrative segregation classification deprived him of a liberty interest protected by the Fourteenth Amendment. *See Meachum v. Fano,* 427 U.S. 215, 223, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

The Fifth Circuit has held that generally speaking, prisoners have no liberty interest in their custodial classification. *Hernandez v. Velasquez,* 522 F.3d 556, 562 (5th Cir. 2008); *Moody v. Baker,* 857 F.2d 256, 257-58 (5th Cir. 1988). A narrow exception exists where the challenged classification amounts to an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Wilkinson v. Austin,* 545 U.S. 209, 222-23, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); *Wilkerson v. Goodwin,* 774 F.3d 845, 852-53 (5th Cir. 2014). Due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incidents of prison

---

[2] Although Plaintiff cites the 5th Amendment on his assertion of a due process claim, the due process claim he raises in his suit arises from the 14th Amendment.

life, or to those that extend the length or duration of confinement. *Sandin v. Conner,* 515 U.S. 472, 484-86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995);  *see also Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

A prisoner has no automatic liberty interest in his custodial classification. *Wilkerson Stalder,* 329 F.3d 431, 435–36 (5th Cir. 2003).  Moreover, the Fifth Circuit has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." *Hernandez v. Velasquez,* 522 F.3d 556, 562 (5th Cir.2008) (citations omitted).

It is the prisoner's burden to demonstrate "extraordinary circumstances" in order to maintain a due process challenge to a change in his custodial classification. *Sandin,* 515 U.S. at 484.  In *Wilkerson v. Stalder,* the Fifth Circuit held that due process *might* have been violated where the plaintiff had been kept on lockdown status for thirty years. *Id.* 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under *Sandin*).

However, even assuming that Plaintiff's classification decisions implicate due process, Plaintiff cannot show that Defendants deprived him of due process.  The U.S. Supreme Court outlined the due process standard for prison policies involving classification that implicate due process interest in *Wilkinson v. Austin.* 545 U.S. 209, 224–30 (2005).  The Supreme Court noted that "[b]ecause the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" *Wilkinson v. Austin*, 545 U.S. 209, 224 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).  The Court ultimately found that as long as a prisoner received notice of the assignment, opportunity to challenge the decision, and periodic reviews, the prisoner was afforded appropriate due process. *Id.*

Here, TDCJ policies requires notice of classification hearing be given to the offender, that the

offender have an opportunity to challenge the decision, and that periodic reviews are provided. Ex. C at 24-29.  There is no evidence that Defendants deviated from TDCJ policies or otherwise deprived Plaintiff of due process.

Plaintiff's suit focuses on three hearings while he was at the Darrington Unit: two hearings involving the UCC in March and April of 2018, and one hearing with the SCC in August 2018.  There is no evidence that Plaintiff was deprived of due process during these hearings.  Plaintiff's own allegations state that he was given an opportunity to explain his situation, that the committee members reviewed his file and discussed Plaintiff's file with him.  The fact that Plaintiff disagrees with the committee members' ultimate decision to assign Plaintiff to administrative segregation does not mean he was denied due process.

In addition to these three hearings, Plaintiff has also received regular 30-day reviews of his unit classification, six-month reviews from the SCC, and yearly reviews of his security threat group designation. *See* Ex. D.

There is no competent summary judgment evidence that the measures taken by Defendants were inadequate to provide Plaintiff necessary due process regarding his housing classification. Therefore, Defendants are entitled to summary judgment on Plaintiff's due process claim.

2.      **Eighth Amendment**

Plaintiff also contends that his placement in administrative segregation at the Darrington Unit amounts to cruel and unusual punishment. ECF 17-2 at 17.  Plaintiff claims that he has be deprived of basic necessities of life and lists generally the lack of human contact and social interaction, environmental and mental stimulus, physical activity, education and rehabilitation opportunities, work, and contact visits. *Id.*  Plaintiff alleges that he could face psychological and physical harm due to solitary confinement. *Id.*

To establish an Eighth Amendment violation based on the conditions of his confinement in

administrative segregation, a plaintiff must show (1) that the deprivation alleged was sufficiently serious as to result in the denial of the minimal civilized measure of life's necessities, and (2) that the defendants acted with deliberate indifference—that is, reckless disregard—to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon*, 474 U.S. 344, 357, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).  Liability under § 1983 may not be premised on a theory of *respondeat superior* or on a finding of mere negligence; rather, the defendants' deliberate indifference must be the "moving force" behind the unconstitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692–94 (1978); *Wilson v. Seiter*, 501 U.S. 294, 305–06 (1991).

Plaintiff does not make any specific allegations on how his housing assignment at the Darrington Unit amounts to cruel or unusual punishment, let alone how Defendants are responsible for any alleged housing conditions.  As such, Plaintiff has failed to show that Defendants were deliberately indifferent to his serious medical needs or conditions of confinement, thus Defendants are entitled to summary judgment on this claim.

### 3.    Equal Protection

Plaintiff claims that his Fourteenth Amendment right to equal protection has been violated because Defendants intentionally treated him differently than similarly situated inmates with no rational basis for the difference in treatment. ECF No. 17-2 at 18.

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).   Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).

"An equal protection claim that is premised on differential treatment but not based on membership in a suspect class or the infringement of a fundamental right may be cognizable as a so-called 'class of one.'" *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Courts "review such claims under a two-prong test: the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* (citing *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (2012)). "Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason." *Id.* at 541. Discriminatory intent "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988) (internal quotes omitted).

A "class of one" claim, however, does not extend to cases where the rules are uniformly applicable, and government officials exercise discretionary authority based on subjective, individualized determinations. *Novotny v. Tripp Cty.,* 664 F.3d 1173, 1179 (8th Cir. 2011). Nor does dissimilar treatment of persons who are not similarly situated violate the Equal Protection Clause. Being similarly situated means that no rational person could regard the circumstances of the plaintiff to be different than those of a comparator, to a degree that would justify the differential treatment. *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 233 (5th Cir. 2012).

Plaintiff does not explain how each defendant was involved in alleged denial of equal protection. Plaintiff simply lists three individuals whom he claims were treated more favorably than he was. He does not allege that Defendants were involved in the classification decisions of these individuals nor does he have any evidence to support his allegations. Plaintiff does not state that these other inmates share his criminal history, convictions for crimes with similar degrees of violence, his

sentence, his institutional record, his behavioral history while confined, his work history, his mental and physical condition, his age, similar lengths of confinement, risks of escape, or any other factors that prison officials, at their discretion, could consider in determining Plaintiff's security classification. *See Stevenson v. Louisiana Board of Parole*, 265 F.3d 1060 (5th Cir. 2001) ("Although [the plaintiff] asserts that the other prisoners who were eligible ... were similarly situated to him, Stevenson has not demonstrated that their criminal records and offenses were sufficiently similar to his circumstances...[and it] is also obvious that the discretionary decision to grant parole must be made on a case-by-case basis based on the unique circumstances of each prisoner."). More fundamentally, Plaintiff's claim arises out of a discretionary decision made by Defendants based on subjective, individualized determinations of Plaintiff's security risk. It is therefore not cognizable as an Equal Protection Claim. *See Novotny v. Tripp Cty.,* 664 F.3d 1173, 1179 (8th Cir. 2011). For these reasons, Plaintiff's claims arising out of an alleged violation of Plaintiff's equal protection rights should be dismissed.

### 4.    Ex Post Facto

Plaintiff also claims that Defendants have violated the Ex Post Facto Clause because the SPD Code policy was enacted and applied after he was assigned to administrative segregation for being a member of a prison gang. ECF No. 17-3 at 19.

The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. Art. I, § 10. As the Fifth Circuit has explained, " '[o]ne function of the *Ex Post Facto Clause* is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission.'" *Casterline v. Thaler,* 494 F. App'x 500 502 (5th Cir. 2012) (quoting *Garner v. Jones,* 529 U.S. 244, 249 (2000)). For example, changes to parole laws may run afoul of the Ex Post Facto Clause if they "create[ ] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' " *Id.* (quoting *Garner,* 529 U.S. at 250). However, changes that "create[ ] only a speculative

and attenuated risk of increasing the measure of punishment" do not implicate the Ex Post Facto Clause. *Id.* at 503 (citing *California Dep't of Corr. v. Morales,* 514 U.S. 499, 509 (1995); *Hallmark v. Johnson,* 118 F.3d 1073, 1078 (5th Cir. 1997)).

In general, "guidelines promulgated by a regulatory body cannot violate the prohibition against ex post facto laws." *See Ward v. Dretke*, C-05-464, 2006 WL 1291824, at *3 (S.D. Tex. May 8, 2006) (citing *Sheary v. Parole Com'n*, 822 F.2d 556, 558 (5th Cir. 1987)).

In Texas, because the TDCJ has the authority to classify and reclassify inmates, any "change in [a prisoner's] classification does not amount to a change in the 'law' for the purposes of an *ex post facto* challenge." *Ward*, 2006 WL 1291824, at *3.  Accordingly, Plaintiff's *ex post facto* claim against Defendants should be dismissed as a matter of law.

**B.      Plaintiff is not entitled to injunctive relief.**

Plaintiff requests to be immediately removed from administrative segregation or enrolled in the GRAD program. ECF No. 17-3 at 19-20.

Plaintiff's claim for injunctive relief must be viewed under the parameters of the PLRA and *Ex Parte Young*.  Under the PLRA, the court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" before granting injunctive relief. 18 U.S.C. § 3626(a).  *Ex Parte Young* sets forth a narrow exception to Eleventh Amendment immunity allowing prospective injunctive relief through official capacity actions. *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

Although the PLRA significantly affects the type of prospective injunctive relief that may be awarded, it has not substantially changed the threshold findings and standards required to justify an injunction.  Injunctive relief is "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixion*, 50 U.S. 10, 13 (1850)).  When a government agency

is involved, a court must additionally observe the requirement that the government be granted the "widest latitude in the dispatch of its own internal affairs." *Id.* at 378-79 (citations omitted); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("[I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

As shown above, Plaintiff cannot prove that he has suffered a violation of any Federal right to allow an injunction under the PLRA. Even if Plaintiff could show a plausible claim involving his classification, his requested relief to be immediately released or granted admittance into a rehabilitation program is not the least restrictive means of correcting his alleged violations.

The Fifth Circuit has long held that classification of prisoners is a matter better left to the discretion of prison officials. *See McCord v. Maggio,* 910 F.2d 1248, 1250 (5th Cir.1990) (citing *Wilkerson v. Maggio,* 703 F.2d 909 (5th Cir.1983)). "Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification." *Id.* at 1251. In *McCord* and *Wilkerson,* the Fifth Circuit emphasized that prison officials must be afforded a broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status. *Id.* at 1250. The officials should also be accorded the widest possible deference in the application of prison policies and procedures designed to maintain security and preserve internal order. *Id.* at 1251 (citing *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)).

Plaintiff's requested injunctive relief is not narrowly tailored to correct any alleged violation of due process, and therefore exceeds the scope of relief allowed under the PLRA. It would be inappropriate for a court to order the release of an offender from a particular security classification without deferring to the judgment of prison officials. For this reason, Defendants urge the Court to deny Plaintiff's injunctive relief.

**C.**      **Defendants are entitled to qualified immunity.**

As stated earlier, when a prison official asserts qualified immunity, the summary judgment burden shifts to the Plaintiff to show through competent summary judgment evidence that there is a genuine issues of material fact regarding the reasonableness of the officials' conduct. *See Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008).

As employees of TDCJ, a state agency, Defendants are entitled to the defense of qualified immunity.  Defendants asserted qualified immunity in their answer and are afforded the protection of the affirmative defense unless Plaintiff can overcome it. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989).

In order to overcome Defendants' entitlement to qualified immunity, Plaintiff must: 1) state a claim for violation of a constitutional right, 2) show that the constitutional right was established at the time of the actions at issue, and 3) demonstrate that a defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of their actions. *Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999).  These requirements will not be satisfied by conclusory allegations of wrongdoing. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988).

In order to satisfy the first prong, the court "must determine whether the record demonstrates that the violation occurred or at least gives rise to a genuine issue of material fact as to whether the Defendants actually engaged in the conduct that violated the clearly-established right." *Kipps*, 197 F.3d at 768 (citing *Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999)).  If it is determined that the officials conduct was unconstitutional, then the court must decide whether the conduct was nonetheless "objectively reasonable." *See Eugene v. Alief ISD*, 65 F.3d 1299, 1305 (5th Cir. 1995).

A prison official is entitled to qualified immunity if his actions were objectively reasonable at the time they were taken. *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 434-35 (5th Cir. 1993).  It is the

court's duty to determine whether the defendant acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed after the fact. *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

In analyzing whether Defendants are entitled to qualified immunity, the first issue is whether Plaintiff can survive summary judgment on his underlying constitutional claims.  Because Plaintiff cannot produce evidence on several essential elements of his constitutional claims against Defendants, all Defendants are entitled to qualified immunity.

Even if Plaintiff could state a claim for violation of a constitutional right, Defendants are still entitled to judgment as a matter of law because Plaintiff has not shown that any of their actions were unreasonable in light of the information they possessed at the time the actions were taken.

Here, the Defendants were involved in Plaintiff's classification decisions at the Darrington Unit.  Defendants reached their decisions after reviewing Plaintiff's history and written responses and providing Plaintiff with a live hearing in which Plaintiff was afforded an opportunity to present evidence or explain his record.  Defendants recorded their justifications for Plaintiff's classification decisions and believed that Plaintiff was appropriately housed in administrative segregation based on his affiliation as a prison gang member and his criminal convictions involving escape, hostage taking, assault, and injury of jailors.

Even if Defendants' judgment was mistaken that Plaintiff presents a security risk, Defendants' mistaken judgment does not overcome their entitlement to qualified immunity.  It was reasonable for officials to believe that Plaintiff's gang affiliation and criminal record demonstrated he required additional security precautions and was not suitable for housing in general population.

Plaintiff cannot show, through competent summary judgment evidence, that there is a genuine issues of material fact regarding the reasonableness of the Defendants' conduct, consequently Defendants are entitled to summary judgment on their entitlement to qualified immunity and the

15

claims against them for punitive damages should be dismissed.

## VIII.   CONCLUSION

Defendants respectfully request that this Court grant their motion for summary judgment and dismiss with prejudice all claims against them.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Jeanine M. Coggeshall*
**JEANINE M. COGGESHALL**
Assistant Attorney General
Texas State Bar No. 24083162
Southern District ID No. 2563655
jeanine.coggeshall@oag.texas.gov
Attorney-in-charge

**EVAN W. WELTGE**
Assistant Attorney General
Texas State Bar No. 21152000
Southern District ID No. 3356225
evan.weltge@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9811

**ATTORNEYS FOR DEFENDANTS
BUTCHER, PHARR, DAVIS, POWERS
AND MONTEZ**

## NOTICE OF ELECTRONIC FILING

I, **Jeanine M. Coggeshall**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on **February 5, 2020**.

/s/ Jeanine M. Coggeshall
**JEANINE M. COGGESHALL**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **Jeanine M. Coggeshall**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing has been served by placing same in the U.S. mail, first-class postage prepaid, on **February 5, 2020**, addressed to:

Aaron Striz, TDCJ No. 838215
Darrington Unit
59 Darrington Road
Rosharon, TX 77583
**Plaintiff *Pro Se***

/s/ Jeanine M. Coggeshall
**JEANINE M. COGGESHALL**
Assistant Attorney General