IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 21 2020

David J. Bradley, Clerk of Court

AARON STRIZ, #838215, §
   Plaintiff,
                                §

v.                                      Civil Action No. 3:18-cv-00202
                                §

BRIAN COLLIER, et.al.,
   Defendants.                   §

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Plaintiff, Aaron Striz, TDCJ-ID No. 838215, pro se, respectfully offers this response to Defendants' Motion for Summary Judgment, in that he wishes to offer rebuttal to Defendants' obfuscation and misrepresentation of certain facts, allegations, and caselaw.

## I. STATEMENT OF FACTS

    Plaintiff Striz's escape and assault on two jailors occured at the Grimes County Jail on August 7, 1998. Twenty-nine days later he was transferred to the Custody of TDCJ at the Byrd Unit for intake diagnostics and subsequently sent to the Terrell Unit in Livingston, Texas where he was assigned to MINIMUM CUSTODY. Defendants conveniently omit this fact, as well as neglect to in clude the fact that Plaintiff remained in general population for three years before he was identified and confirmed as a Security Threat Group (STG) member and placed into administrative segregation (ad-seg_ in August 2001.
    At no time was Plaintiff ever assigned to ad-seg for anything related to his escape from the county jail, or for any other rules violations. On the Initial Hearing Record of August 10, 2001, the only documented reason for his placement in ad-seg is due to being a member of an STG. (See Defendants' Initial Disclosure, pg 00834.--Plaintiff apologizes to the court for his inability to attach copies of cited documents, but he does not have access to a copy machine, and it would be redundant to continually file copies of the same documents.) for the first 17 years of his ad-seg confinement, "Confirmed-STG" is the ONLY excuse consistently used to justify Plaintiff's retention in ad-seg, despite the completion of the "Attachment-B" form officially documenting his disassociation from STG membership in July 2010. (See Defendants' Initial Disclosure, pps 0081 and 0082) Therefore, since July 2010, TDCJ officials have repeatedly and knowingly used a false excuse (Confirmed-STG) to keep Plaintiff indefinitely confined to ad-seg through perfunctory reviews that offer no possibility of release from ad-seg, and using rote repetition of the reason for initial placement in ad-seg as the continued reason for ad-seg, even though they know it is no longer valid.
    In July 2018 Plaintiff filed this complaint. Now, Defendants attempt to argue that Plaintiff is "appropriately housed" in ad-seg

due to the escape from county jail more than two decades ago, AFTER which he was assigned to minimum custody upon entering TDCJ? This argument completely defies any standards of objective reasonableness, and is undermined by facts and documents provided by Defendants' Initial Disclosure and referred to in Plaintiff's Supplemental Pleading in Support of His Motion for Summary Judgment, as well as documents provided by Plaintiff in his Original and Amended Complaints and other filings.

## II.  DUE PROCESS

Plaintiff's complaint is not, as Defendants argue, simply about his classification reviews since arriving at Darrington Unit on March 28, 2018. As Defendants point out on page 1 ans 2 of their Motion, Plaintiff's Original Complaint named 17 Defendants, and his Amended Complaint added 3 more defendants, as he complains about nearly two decades of indefinite solitary confinement spanning three different facilities. This court simply ordered a response from those Defendants who currently hold him in custody. Transferring him from one facility to another does not restart the "initial classification" process, as he is in the same prison system, under the same ultimate administration, and with the same continuing justification and rote repetition for the confinement. Wilkerson v. Goodwin, 774 F.3d 845, 857 (5th Cir. 2014). Time spent in different facilities should be aggregated when deciding whether a liberty interest is implicated by ad-seg.

The basis of Plaintiff's complaint is that he has been indefinitely held in ad-seg for more than 19 years, and that since at least July 2010, when the "Attachment-B" form was completed, every single review since then has been an empty, perfunctory sham with no prospect or possibility of release, and no criteria for release, because Defendants continue to use an excuse they know to be no longer valid (Confirmed-STG) to keep him in ad-seg simply because they require him to complete the GRAD Program for which they then turn around and made him ineligible for. In what world does that sort of circular reasoning constitute MEANINGFUL due process as required? See Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir. 1975), Wilkerson v. Stalder, 639 F.Supp 2d 654 (M.D.LA. 2007), subseq. Wilkerson v. Goodwin, 774 F.3d 845 (5th Cir. 2014), McClary v. Kelly, 4 F.Supp 2d 195 (W.D.N.Y. 1998) subseq. McClary v. Coughlin, 87 F.Supp 2d 195 (W.D.N.Y. 2000), and Wilkinson v. Austin, 125 S.Ct. 2384 (2005).

Interestingly, Defendants "quote" Wilkinson at pg 7 of their Motion, when attempting to argue that Plaintiff has no due process rights in this suit. A closer examination of the S.Ct.'s decision in that case states, at 2393, "A liberty interest may arise from the Constitution itself...or it may arise from an expectation or interest created by state laws or policies, see, e.g. Wolff v. McDonnell, 418 U.S. 539, 556-558." (In the instant case, Plaintiff Striz was told that in order to be released from ad-seg he must renounce gang membership and complete the GRAD Program, a policy promulgated by the state, to which he has an expectation that the state would allow him to complete and return to the general population.)

Further, Wilkinson at 2393, "We have also held, however, that a liberty interest in avoiding particular conditions of confinement

2.

may arise from state policies or regulations, subject to the important limitations set forth in Sandin." Sandin requires an atypical and significant hardship in degree or duration of segregation. Plaintiff's segregation approaching two decades greatly exceeds this threshold as established by Wilkerson v. Goodwin, 774 F.3d 845, 855 (5th Cir. 2014), citing Shoats v. Horn, 213 F.3d at 144 (3rd Cir. 2000) (8 yrs is atypical), Laue v. Johnson, 117 F.Appx. 365, 366 (5th Cir. 2004) (8 yrs in ad-seg is atypical and significant).

Clearly, Plaintiff's near two decades of continuous indefinite confinement to ad-seg with no prospect of release, and no identifiable criteria for future release, constitutes an atypical and significant hardship in degree and duration by any standards, and therefore establishes a liberty interest and right to meaningful due process.

### III. PLAINTIFF'S ALLEGED "GANG" STATUS"

In their Motion for Summary Judgment, defendants repeatedly refer to Plaintiff's "gang status" as justification for keeping him in ad-seg, despite documented evidence in their own Initial Disclosure. See Defendants' Initial Disclosure, pps 0081, "Attachment-B" form, and 0082, "I.O.C." recommending that Striz be designated as an **EX**-member of ABT. Defendants' own disclosures prove that Plaintiff is no longer a gang member, as do copies of emails attached to Plaintiff's Amended Complaint, (Dkt. 11-1, exhibit C(5)), from Robert Grant at STGMO headquarters stating that Plaintiff is preapproved for GRAD but not eligible due to SPD Codes.

In short, Defendants are attempting to intentionally mislead this Court regarding Plaintiff's alleged "gang status" among their flimsy excuses for continued indefinite confinement.

Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir. 1975), the reason for segregation must not only be valid at the outset but must continue to subsist during the period of segregation. Hewitt v. Helms, 459 U.S. 460, 477 (1983), Ad-seg may not be used as a pretext for indefinite confinement of an inmate. And, Mathews v. Eldridge, 424 U.S. 319, 333 (1976), although due process is a flexible concept, a fundamental requirement of all due process is that it be meaningful and not a perfunctory sham or fraud.

By continuing to use "confirmed-STG" as an excuse for continued ad-seg, despite documentation that Plaintiff is no longer a gang member, simply because they will not allow him to complete GRAD for an unrelated reason (SPD Codes), Defendants have rendered the review process to be an empty, perfunctory, meaningless fraud, a mockery of "due process" because the outcome is predetermined before the hearing ever begins: "remain in ad-seg as confirmed-STG until you complete GRAD...see you in 6 months..."

And although Hewitt was later abrogated on other groundsby Sandin, the Supreme Court also stated in Wilkinson, at 2397, "Although Sandin abrogated Hewitt's methodology forestablishing liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards."

Plaintiff is no longer a gang member, and hasn't been since long before July 2010 (the investigation began in 2008). Therefore any arguments by Defendants predicated on alleged "gang status" are completely flawed and blatantly dishonest.

3.

## IV. EX POST FACTO APPLICATION OF SPD CODES

The TDCJ SPD Code policy was created in the wake of the Texas-7 fiasco. It went into effect shortly after Plaintiff was assigned to ad-seg as confirmed-STG. **NOWHERE** in the Classification Plan or SPD Code Policy (Administrative Directive-4.11) does it require that offenders with SPD Codes be placed in ad-seg. In fact, it merely restricts them from achieving minimum custody status (G3 or above). Offenders with active SPD Codes are housed on Medium custody (G3) or Close Custody (G4) for at least 10 years from the date of the incident that caused placement of the SPD Code. Thus, IF Plaintiff Striz had never been placed in ad-seg as confirmed-STG member, he would have remained in general population as G4/G5 status once the SPD Code policy went into effect. And in fact, when this policy went into effect in 2001, no offenders were snatched out of general population and tossed into ad-seg for newly applied SPD Codes.

Plaintiff can prove this through discovery by requesting TDCJ Classification records and statistics of any offenders who may have been removed from general population and placed into ad-seg for the then newly applied SPD Code policy, thereby disproving Defendants' argument that Plaintiff "should" be in ad-seg for SPD Codes, or rather, the incident that resulted in those codes.

Rule 56(d) of the Federal Rules of Civil Proc; IF, for specified reasons, facts are unavailable to nonmovant essential to justify its position, the court may deny summary judgment or allow time to take discovery. Hayes, 2011 U.S. Dist LEXIS 101312, Tatum, 441 F.3d 1090 (9th Cir. 2006).

In this case, the specified reason that Plaintiff does not have access to these documents is that he is an inmate and therefore the only way to have access to these statistics and records is via the discovery process.

Furthermore, it seems that Defendants' current position--arguing that Plaintiff's escape from county jail in 1998 and the resultant SPD Codes are now their justification to hold him indefinitely confined to ad-seg, when this was never previously used to place or hold him in ad-seg until this lawsuit was filed--it seems that they are now making his ex post facto claim for him, in that they now wish to hold him in ad-seg for something that occured more than 20 years ago, for which he was never previously punished or adversely classified, yet now they wish to go back and subject him to extremely punitive conditions of confinement for this old incident despite 22 years of good behavior? It seems an odd tactic to admit to an ex post facto punishment while trying to deny you are in fact doing it.

Wilkerson v. Stalder, 639 F.Supp 2d 654, 680 (M.D.LA. 2007), citing Kelly v. Brewer, "While...administrative segregation is not inherently unconstitutional, its validity depends...in individual cases upon the existence of a valid and subsisting reason or reasons for the segregation. It goes without saying that a prison warden may not constitutionally put an inmate in ad-seg, involving solitary confinement or other rigorous conditions of imprisonment, simply because he dislikes the inmate or wishes to punish him for past misconduct."

Defendants' argument further fails, when they assert that the

4.

retroactive application of SPD Codes and two decade delay in using it as an "official" excuse for indefinite ad-seg is merely an administrative or regulatory act, not an ex post facto law. This is clearly an erroneous interpretation of precedent.

Weaver v. Graham, 101 S.Ct. 960 (1981), at 966, "We have held that a statute may be retrospective even if it alters punitive conditions outside the sentence. Thus, we have concluded that a statute requiring solitary confinement prior to execution is ex post facto when applied to someone who committed a capital offense prior to its ennactment.

"For prisoners who committed crimes before its ennactment, [new law] substantially alters the consequences attached to a crime already completed, and therefore changes the quantum of punishment." Weaver, citing Dobbert v. Florida, 432 U.S. 282, 293-294.

And while Defendants claim that the SPD Code policy is not a "statute" for purposes of ex post facto, the Supreme Court says otherwise. Collins v. Youngblood, 110 S.Ct. 2715, A statute or administrative regulation may be barred as retrospective even if it alters punitive conditions outside the sentence, at 2721, "by simply labelling a law procedural, it does not thereby immunize it from scrutiny under the Ex Post Facto Clause. See Gibson v. Mississippi, 162 U.S. 565, 590 (1896), subtle ex post facto violations are no more permissible than overt ones.

Koch v. Lewis, 216 F.Supp.2d 994 (D.AZ. 2001), 959-960, "The Ex Post Facto Clause prohibits prison officials, for example, from imposing new or amended regulations which are themselves "punitive conditions" of confinement...Occasionally, a regulation may be so punitive in effect as to prevent a court from legitimately viewing it as regulatory or civil in nature, despite the rulemaker's intent." citing Russell v. Gregoire, 124 F.3d 1079, 1086 (9th Cir. 1997), citing U.S. v. Ursery, 518 U.S. 267 (1996).

In the present case, TDCJ officials now wish to impose punitive conditins of confinement--indefinite ad-seg--for an escape that occured more than 20 years ago, and for which they never previously punished or adversely classified him immediately after it occured... or in the nearly two decades since...until this lawsuit was filed. Now they want to use it as an excuse to hold him in ad-seg...even though they still tell him at classification review hearings and subsequent grievances that he is in seg as "confirmed-STG?" (See grievances submitted as Supplemental Disclosures.)

Once again, Defendants' arguments and "defenses" and excuses are completely flawed and blatantly dishonest.

## V. EQUAL PROTECTION

Defendants have attempted to muddle the argument by insinuating a wealth of potential characteristics which may--or may not-- differentiate him from those other prisoners he named as being similarly situated but treated differently; namely Taylor Ray, Allen Campbell, Riley Ray Fultz, and Isaac Salazar, all of whom h have violent felony convictions and SPD Codes for escape but were allowed to complete the GRAD Program and released to general population.

Defendants assert that Plaintiff has not stated the specific characteristics of these similarly situated inmates. How specific must the similarities be before it becomes absurd? Should this court deem it necessary to develop this evidence, it will be

available--and definitely requested--through discovery. Currently, Plaintiff is not allowed acess to such information, and TDCJ prohibits inmate-to-inmate correspondence, thus preventing Plaintiff from obtaining statements from said individuals. Surely, Defendants are aware of this, and their argument that Plaintiff has not provided specific personal information regarding these individuals is only possible through discovery, and thus Defendants' argument is rather hollow and disingenuous.

Therefore, under Rule 56(d), and Hayes, 2011 U.S. Dist LEXIS 101312, and Tatum, 441 F.3d 1090 (9th Cir. 2006), summary judgment in favor of Defendants would be inappropriate.

Additionally, as Defendants wish to argue that, for purposes of Equal Protection, Plaintiff is a "class of one" due to individual extraordinary circumstances, it would seem that Defendants are making the case that Plaintiff satisfies the extraordinary and exigent circumstances requirement to sustain a due process claim as outlined by Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008), Wilkerson v. Stalder, 329 F.3d 431 (5th Cir. 2003), Wilkerson v. Goodwin, 774 F.3d 845 (5th Cir. 2014), and Wilkinson v. Austin, 545 U.S. 209.

So, either Plaintiff is entitled to Equal Protection of similarly situated inmates, or he is a "class of one" due to extraordinary individual circumstances which then clears the due process hurdle: which are Defendants arguing? it seems they want it both ways despite the contradictory positions.

## VI. EIGHTH AMENDMENT

Defendants again attempt to misconstrue Plaintiff's claims. Plaintiff does not allege that "placement in ad-seg at Darrington Unit amounts to cruel and unusual punishment." Plaintiff asserts that nearly two decades of long-term solitary confinement in ad-seg, spanning three different facilities, for no valid reason, using an excuse they know to be invalid, and with no prospect of release from ad-seg, and no criteria or pathway to progress out of ad-seg, despite 22 years of good behavior, THAT, is what Plaintiff argues amounts to cruel and unusual punishment in violation of the 8th Amendment, in its degree and duration.

The Supreme Court and numerous circuit courts seem to all agree on this issue: indefinite long-term solitary confinement with no legitimate penological objective, approaching two decades, is an atypical and significant hardship in degree and duration. And to do so with no continuing valid reason is unconstitutional.

The extremely harmful effects of long-term solitary confinement are clearly established and accepted by the courts. for Defendants to deny this, is to simply deny reality. What next, will they deny that the sky is blue? Wilkerson v. Stalder, 639 F.Supp.2d 654, (M.D.LA. 2007), at 677 cites many of these cases establishing and recognizing the harmful effects of long-term solitary confinement. At 679, "As stated by one federal district judge, and cited by plaintiff's in brief, 'A conclusion that prolonged isolation from social and environmental stimulation increases the risk of development of mental illness does not strike this court as rocket science.' (citing McClary v. Kelly, 4 F.Supp2d 209). Nor does it strike this court as rocket science."

If Defendants truly wish to assert that long-term isolation approaching two decades for no valid reason is not a risk of

6.

subjecting Plaintiff to severe psychological harm, or doesn't constitute cruel and unusual punishment, then Defendants should definitely forego any aspirations of applying for a job at NASA... or even model rockets as a hobby.

## VII. QUALIFIED IMMUNITY

The above cited cases are clearly established for the purposes of negating a qualified immunity defense. In fact, McClary v. Coughlin, 87 F.Supp.2d 205 (W.D.N.Y. 2000), and Wilkerson v. Stalder, 639 F.Supp.2d 654 (M.D.LA. 2007), subseq. Wilkerson v. Goodwin, 774 F.3d845 (5th Cir. 2014), all specifically address the issue of Qualified Immunity and Summary judgment, and all conclude that officials are not entitled to qualified immunity in such instances where their conduct is found to be unconstitutional and any reasonable official should have known their conduct was unreasonable.

In McClary, it was determined that officials who conducted repeated perfunctory sham hearings and held an inmate in ad-seg for four and one-half years with no valid reason, were liable for punitive damages. At 215, citing Mackey v. Dyke, 29 F.3d 1086, 1094-95 (6th Cir. 1994), cert, denied %22 U.S. 848 (1997), "defendants are not entitled to qualified immunity because inmate's right not to be confined arbitrarily in ad-seg after reason for initial confinement no longer existed has been clearly established at least since Hewitt v. Helms."

In Wilkerson v. Stalder, 639 F.Supp.2d 654, 683-685 (M.D.LA 2007), the issue of qualified immunity and summary judgment is clearly defined and determines that, in a case that parallels the present one, officials are not entitled to qualified immunity or summary judgment for unreasonable decisions to keep an inmate housed in solitary confinement for decades with no valid reason.

At 683, "...the Supreme Court has made it abundantly clear... that deprivations of basic human need that caused a substantial risk of serious harm to inmates satisfies the objective prong of the 8th Amendment. Farmer, 511 U.S. at 828...The Supreme Court also made it clear taht prison officials must have a legitimate penological interest justifying any conditions that result in pain or humiliation."

At 684, "It is also a matter of common sense that three decades of extreme isolation and enforced inactivity in a space smaller than a typical walk-in closet present the antithesis of what is necessary to meet basic human needs."

At 685, "It is clear that in 1999, any reasonable official would know that continuing to hold inmates in isolation, in a solitary cell for 23 hours a day for three decades as a punitive measure without any current, legitimate penological justification is constitutionally infirm. Whether or not this evidence prevails at trial is for a jury to decide, but for purposes of this motion, it is sufficient to overcome defendants' motion with regard to qualified immunity."

In Wilkerson v. Goodwin, 774 F.3d 845 (5th Cir. 2014), at 858-859, "In 2010, a reasonable prison official would have been on notice that continuing [inmate's] solitary confinement would give rise to a liberty interest requiring procedural protections...cases such as Wilkinson and Hernandez made clear that even an initial security classification may give rise to a liberty interest if the Sandin 'atypical and significant hardship' test is met."

7.

At 859, "Having found a clearly established liberty interest, we affirm the denial of summary judgment based on qualified immunity and leave the question of the adequacy of the process to be resolved in the district court."

Considering that the 5th Circuit affirmed the denial of summary judgment based on qualified immunity and left the question of the adequacy of the process to be resolved in the district court, it appears that defendants are not entitled to qualified immunity or summary judgment as requested in their motion. And further, the question reverts to the process due Plaintiff.

How could any objectively reasonable official examine Plaintiff's classification file, the sequence of events, that he was initially assigned to minimum custody upon entering TDCJ, then ONLY assigned to ad-seg in 2001 as a "confirmed-STG" member, see the official documentation that he is no longer a gang member (as evidenced by the completed "Attachment-B" form and I.O.C. recommending that he be designated as an **EX**-member), then ignore all such evidence and continue to use "confirmed-STG" as the excuse for indefintie ad-seg confinement? Simply because he is ineligible for GRAD/// even though the TDCJ STG Plan provides for his release from ad-seg via "Non-GRAD disassociation?" How is Plaintiff's continued ad-seg confinement a reasonable decision? And how could any objectively reasonable individual consider such a "review process" to be meaningful due process rather than an empty perfunctory sham?

Defendants' Motion for Summary Judgment includes the TDCJ Classification Plan as exhibit-c. On pg 7 of 44 (or pg 2 of the Classification Plan), it lists among other objectives, at No. *, an objective to comply with "judicial interpretation of legislative mandates." This seems to imply that TDCJ officials have a duty to be aware of , and comply with, judicial caselaw. Therefore, these Defendants should have been aware of all relevantcaselaw cited herein and in previous filings by Plaintiff.

Further, Defendants cannot claim ignorance of the law, or lack of fair notice, because for nearly a decade Plaintiff has repeatedly cited relevant caselaw in countless grievances and written statements to classification reviews, and Plaintiff has attached copies of only a fraction of these as evidence to his previous filings. Plaintiff has attached ample evidence in the form of classification records, emails from officials, and other relevant documentation. Defendants' Initial Disclosure also provided ample evidence in Plaintiff's favor, as cited in Plaintiff's Supplemental Pleading in Support of Partial Summary Judgment.

Therefore, contrary to Defendants' protestations to this Court, Plaintiff has provided ample evidence to defeat a qualified immunity defense beyond "mere allegations"of his pleadings, by showing nearly two decades worth of classification review forms that, in the words of <u>Wilkerson v. Goodwin</u>, at 856, "The Review Board's rote repetition of the reason for the inmate's continued confinement as being the same reason they were initially placed in lockdown effectively eliminates any possibility of release, regardless of their current situation and behavior while in lockdown. The original reason for placement in lockdown can never change, thus Plaintiff's current situation of 'indefinite placement' is static, with no hope of release other than by death or release from the prison entirely."

## VIII. CONCLUSION

For all of the above reasons, Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment and their defense of qualified immunity as the facts, evidence, and caselaw all support Plaintiff's positions.

Respectfully Submitted,

_____
AARON STRIZ, TDCJ-ID No. 838215
Pro Se

\* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I, Aaron Striz, TDCJ-ID no. 838215, pro se, certify that a true and correct copy of the foregoing has been served by placing same in the U.S. Mail, first class postage prepaid, on February 17, 2020, addressed to:

Jeanine M. Coggeshall
Assistant Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Ausitn, Texas 78711-2548

_____
Aaron Striz, TDCJ-ID No. 838215
Darrington Unit
59 Darrington Rd.
Rosharon, TX 77583

9.